UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL KENT VICKERY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | |
| ) | |
| ) | |
| CONAGRA FOODS, INC., ) | **JURY TRIAL DEMANDED** |
| ) | |
| and ) | |
| ) | |
| RALCORP HOLDINGS. INC. ) | |
| SEVERANCE PLAN FOR EXEMPT ) | |
| ADMINISTRATIVE EMPLOYEES ) | |
| ELIGIBLE FOR THE RALCORP ) | |
| HOLDINGS, INC. MANAGEMENT ) | |
| BONUS PROGRAM ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Comes now Plaintiff Michael Kent Vickery, by and through counsel, and for his cause of action against Defendants ConAgra Foods, Inc. and Ralcorp Holdings, Inc. Severance Plan for Exempt Administrative Employees Eligible for the Ralcorp Holdings, Inc. Management Bonus Program states:

NATURE OF THE ACTION

In this action, Plaintiff alleges violation of the Employment Retirement Income Security Act ("ERISA") through a breach of Defendants' fiduciary duty under that statute, i.e., failure to pay benefits as required under the severance plan, through failure to require a successor to adopt and abide by the terms of the severance plan, and through failure to pay plaintiff's attorney fees and costs during the pendency of the dispute, as required by the terms of the severance plan.

1

Plaintiff brings suit under ERISA § 502(a)(1)(B) to "recover benefits due to him under the terms of his plan, [and] to enforce his rights under the terms of the plan . . . ." Plaintiff also brings suit under ERISA § 502(a)(1)(3)(B) "to obtain . . . appropriate equitable relief to redress" the violation of the terms of the plan.

PARTIES

1. Plaintiff Michael Kent Vickery ("Vickery") is an individual residing in Bono, Arkansas.

2. Defendant ConAgra Foods, Inc. ("ConAgra") is a for-profit corporation which makes and sells packaged food products under various labels and which resides in Omaha, Nebraska.

3. Ralcorp Holdings, Inc. Severance Plan for Exempt Administrative Employees Eligible for the Ralcorp Holdings, Inc. Management Bonus Program ("Severance Plan") is an "employee welfare benefit plan" pursuant to Section 3(1) of ERISA, 29 U.S.C. §1002(1). Severance Plan was created by ConAgra's predecessor to provide severance benefits for a subset of its employees.

4. Vickery was employed by Ralcorp Holdings, Inc. (Ralcorp) in Ralcorp's Medallion Foods division, and by Ralcorp's successor, ConAgra, until April 14, 2014, when ConAgra sold Medallion Foods to Shearer's Foods, LLC, ("Shearer's") thereby involuntarily terminating Plaintiff.

JURISDICTION AND VENUE

1. This Court has jurisdiction over this cause of action and the parties pursuant to ERISA Sections 502(e) and (f), 29 U.S.C. §§ 1132(e) and (f).

2.	Venue is proper because the parties have agreed that all disputes arising out of the severance plan here at issue shall be subject to the exclusive jurisdiction of the United States District Court for the Eastern District of Missouri.

## FACTS

1.	ConAgra purchased Ralcorp in January of 2013.

2.	Vickery held the position of Senior Manager – Quality (Grade 17) for Ralcorp in its Medallion Foods division at the time of the sale to ConAgra.

3.	ConAgra retained Vickery and he continued in the position of Senior Manager – Quality (Grade 17) in the Medallion Foods division after ConAgra acquired Ralcorp. In his position as Senior Manager – Quality (Grade 17) for Ralcorp, Vickery was eligible for participation in the Severance Plan, a true and accurate copy of which is incorporated as Exhibit 1.

4.	The Severance Plan is an employee welfare benefit plan governed by ERISA.

5.	ConAgra expressly assumed the obligations and the fiduciary duty of the Severance Plan when it purchased Ralcorp.

6.	Under Article II, Section B(1) of the Severance Plan, if an employee that qualifies for Ralcorp's Management Bonus Program who does not hold a position of Vice President or above is involuntarily terminated other than for cause within 24 months following a Change in Control, such employee will receive the equivalent of 52 weeks of base pay plus one week of base pay per year of service.

7.	The purchase of Ralcorp by ConAgra constitutes a "change in control" required to trigger the Severance Plan.

8.	The required change in control occurred on January 29, 2013.

9. Vickery meets the eligibility requirements described in Paragraph 7.

10. ConAgra employed Vickery in its Medallion Foods division until April 14, 2014.

11. ConAgra closed on a sale of the Medallion Foods division to Shearer's Foods, LLC on April 14, 2014, the terms of which are described and stated in the Asset Purchase Agreement By and Among Medallion Foods, Inc., ConAgra Foods, Inc. and Shearer's Foods, LLC ("Asset Purchase Agreement").

12. Shearer's did not assume ConAgra's responsibilities under the Severance Plan through the sale and Asset Purchase Agreement.

13. ConAgra is not a predecessor of Shearer's Foods.

14. ConAgra involuntarily terminated Vickery when it sold its Medallion Foods division to Shearer's on April 14, 2014, which occurred within the 24 month window following the January 29, 2013 change in control.

15. Vickery was not terminated for cause.

16. At the time of his involuntary termination, Vickery's annual salary was approximately $119,885.

17. Under the Severance Plan, Vickery is entitled to approximately $136,023.37 in severance pay pursuant to Article II, Section B(1) of the Severance Plan because he was involuntarily terminated, plus 12 weeks of subsidized COBRA premiums, a lump sum acceleration of any performance bonus payments, and outplacement services for up to two years.

18. Vickery, through legal counsel, filed a claim for his benefits under the Severance Plan on May 19, 2014.

19. ConAgra and the Plan Administrator for the Severance Plan denied Vickery's claim for benefits in a letter dated August 26, 2014.

20. Vickery, through legal counsel, followed the requirements of the appeals process and filed an appeal of his earlier denial of benefits on September 26, 2014.

21. Vickery's appeal was denied by ConAgra and the Plan Administrator in a letter dated November 24, 2014.

22. By filing his formal claim and appeal, Vickery has exhausted his administrative remedies required under the Severance Plan.

## CLAIM

### Count I:  ERISA Section 502(a)(1)(B) Failure to Pay Benefits Due Under the Severance Plan

23. Vickery incorporates paragraphs 1 through 23 as though restated herein.

24. Vickery was involuntarily terminated without cause following a change in control, as all of those terms are meant within the meaning of the Severance Plan.

25. Vickery is therefore entitled to severance pay and benefits pursuant to Article II, Section B(1) of the Severance Plan.

26. ConAgra, acting in its capacity as a fiduciary of the Severance Plan, has breached the fiduciary duty owed to Vickery by failing to pay his severance under the Severance Plan.

27. The Plan Administrator has breached the fiduciary duty owed to Vickery by failing to pay his severance under the Severance Plan.

28. In acting to deny Vickery his rightfully earned benefits, ConAgra and the Plan Administrator abused their discretionary authority or control over the management or disposition of the assets of the Severance Plan and abused their discretionary authority in the administration of the Severance Plan. See, *Lockheed Corporation v. Spink*, 517 U.S. 882, 890 (1996) (in exercising discretionary authority or control over a plan, a person becomes a fiduciary); *Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 87-88 (2nd Cir. 2001), *cert. denied*, 123 S.Ct.

5

1015 (2003) (employer's decision to reduce welfare benefits in violation of contractual promise to vest such benefits may constitute exercise of discretionary authority with respect to a plan, making the employer's actions fiduciary ones regarding such plan). *See also Varity Corporation,* 516 U.S. 489 (1996) (employer/plan sponsor was liable as a fiduciary).

29. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), imposes an obligation on ConAgra and the Plan Administrator to discharge their duties solely in the interest of participants and beneficiaries and for the exclusive purposes of providing benefits to participants and their beneficiaries.

30. ConAgra and the Plan Administrator have both the responsibility of determining eligibility for benefits under the Severance Plan and the responsibility of paying benefits owed under the Severance Plan, and therefore, they have a conflict of interest.

31. ConAgra's and the Plan Administrator's conflict of interest subjects their interpretation and application of the Severance Plan to deny Vickery's benefits to a standard less than the abuse of discretion standard generally afforded to plan administrators where a plan grants discretionary authority to the plan administrator to interpret and apply the plan. *See Silva v. Metro. Life Ins. Co.*, No. 13-2233, slip op. at 9 (8th Cir. Aug. 7, 2014).

32. As a result of the breach of ConAgra's and the Plan Administrator's fiduciary duty in regards to the Severance Plan, Vickery has suffered the loss of severance benefits.

**WHEREFORE**, Plaintiff Vickery prays that the Court enter judgment in his favor and against Defendants ConAgra and the Severance Plan for failure to pay his severance benefits, and award the following:

1. Benefits owed to Vickery under the terms of the Severance Plan;
2. Prejudgment interest;

3. Attorneys' fees and costs; and

4. Such other and further relief as is just and proper.

### Count II:  The Severance Plan Requires the Payment of Plaintiff's Attorney Fees and Costs on an Ongoing Basis

34. Vickery incorporates paragraphs 1 through 33 as though restated herein.

35. Article IV, Section B of the Severance Plan provides as follows:

> **Legal Fees/Accounting Expenses**. In connection with or after a Change in Control, the Company shall pay to the Employee as incurred all legal and accounting fees and expenses incurred by the Employee in seeking to obtain or enforce any right or benefit provided by this Plan under Article II(B), unless the Employee's claim is found by a court of competent jurisdiction to have been frivolous. Any such reimbursements or payments that are taxable to the Employee shall be subject to the following restriction: each reimbursement or payment must be paid no later than the last day of the calendar year following the calendar year during which the expense was incurred or tax was remitted, as the case may be.

36. Defendants have failed and refused to pay Plaintiff's attorney fees, despite request.

37. Payment of attorney fees "as incurred" is a contractual entitlement, rather than a discretionary matter, under the Severance Plan.

38. ConAgra has breached its fiduciary duty under ERISA § 404(a)(1)(D), 29 U.S.C. § 11024(a)(1)(D), to "discharge [its] duties with respect to [the Severance Plan] solely in the interest of the participants and beneficiaries and in accordance with the documents and instruments governing the [Severance Plan] . . . " by failing to pay Plaintiff's attorneys' fees as incurred.

39. Plaintiff is entitled to relief under ERISA § 502(a)(3) for the failure to pay his attorneys' fees as incurred.

**WHEREFORE**, Plaintiff Vickery prays that the Court enter an Order in his favor and against Defendants ConAgra and the Severance Plan for failure to pay his attorneys' fees and

7

costs as incurred, and award the following:

1. An Order requiring Defendants to pay Plaintiff's currently accrued attorneys' fees, within 15 days of the date of the Order.

2. An Order requiring Defendants to pay Plaintiff's subsequent attorney fees on a monthly basis throughout the pendency of this litigation, within fifteen days of receipt of a bill for same from Plaintiff's attorney.

### Count III: ERISA Section 502(a)(3)(B) Violation of the Plan's Terms Requiring Successor Company to Assume the Severance Plan

37. Vickery incorporates paragraphs 1 through 39 as though restated herein.

38. Article IV, Section G of the Severance Plan provides:

> **Successors and Assigns**. This Plan shall be binding upon the Company and any successor to the Company, including any persons acquiring directly or indirectly all or substantially all of the business or assets of the Company by purchase, merger, consolidation, reorganization, or otherwise. Any such successor shall thereafter be deemed to be the "Company" for purposes of this Plan, and the term "Company" shall include Ralcorp Holdings, Inc. to the extent advantageous to the Employees by providing them with the benefits intended under this Plan. However, this Plan and the Company's obligations under this Plan are not otherwise assignable, transferable, or delegable by the Company. By written agreement, the Company shall require any successor to all or substantially all of the business or assets of the Company expressly to assume and agree to honor this Plan in the same manner and to the same extent the Company would be required to honor this Plan if no such succession had occurred.

39. Article X, Section 10.6 of the Asset Purchase Agreement provides:

> Welfare Plans. The parties acknowledge that the Business Employees currently participate in welfare benefit plans and programs of Seller or its Affiliates . . . As of the Closing Date, the Business Employees shall cease to participate in such welfare benefit plans and programs, except as set forth in Sections 10.8 and 10.9.

40. Article X, Sections 10.8 and 10.9 of the Asset Purchase Agreement deal with medical insurance and workers' compensation expenses, respectively, and do not address the Severance Plan.

41. Article X, Section 10.3 of the Asset of Purchase Agreement required Shearer's to provide severance benefits consistent with the terms of its own severance policies and did not require Shearer's to "assume and agree to honor" ConAgra's severance plan and its obligations, as required by Article IV, Section G of the Severance Plan.

42. By and through its failure to require Shearer's to "assume and agree to honor" the Severance Plan, ConAgra breached its fiduciary duty under ERISA § 404(a)(1)(D), 29 U.S.C. § 11024(a)(1)(D), to "discharge [its] duties with respect to [the Severance Plan] solely in the interest of the participants and beneficiaries and in accordance with the documents and instruments governing the [Severance Plan] . . . ."

43. As a result of ConAgra's failure to discharge its duties under the Severance Plan, Vickery is entitled to relief to redress the violation and to enforce the requirements of ERISA and the terms of the Severance Plan against ConAgra.

**WHEREFORE**, Plaintiff Vickery prays that the Court enter an Order in his favor and against Defendant ConAgra for breach of its fiduciary duty under ERISA § 504(a)(1)(D), and award the following:

1. An Order requiring Defendant ConAgra to enforce the terms of the Severance Plan and pay benefits owed to Vickery,

2. Prejudgment interest;

3. Attorneys' fees and costs; and

4. Such other and further relief as is just and proper.

Respectfully submitted,

HAMMOND AND SHINNERS, P.C.
7730 Carondelet Avenue, Suite 200
St. Louis, Missouri 63105
Tel:    (314) 727-1015
Fax:    (314) 727-6804
sahall@hammondshinners.com


 /s/ Sherrie Hall_____
SHERRIE A. HALL, #40949MO
STEPHEN J. EVANS, #64839MO
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was mailed, by certified mail, return receipt requested, to the Secretary of Labor, United States Department of Labor, P.O. Box 1914, Washington, D.C.  20013 and to the Secretary of Treasury, United States Treasury, 15th and Pennsylvania Avenue, Washington, D.C. 20220, on May 19, 2015.


/s/ Sherrie Hall