# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

MICHAEL KENT VICKERY, )
)
       Plaintiff, )
)
  v. )      No. 4:15-CV-797 CAS
)
CONAGRA FOODS, INC., et al., )
)
       Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court on cross-motions for summary judgment filed by plaintiff Michael Kent Vickery, and defendants ConAgra Foods, Inc. ("ConAgra") and Ralcorp Holdings, Inc. Severance Plan for Exempt Administrative Employees Eligible for the Ralcorp Holdings, Inc. Management Bonus Plan (the "Severance Plan" or "Plan") (collectively referred to as "defendants"). The motions are fully briefed and ready for decision. Also ready for decision is plaintiff's Motion for Interim Attorneys' Fees. For the following reasons, the Court will grant defendants' motion for summary judgment and deny plaintiff's motions for summary judgment and for interim attorneys' fees.

## I. Factual and Procedural Background

This is an action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq. Plaintiff alleges he was employed by Ralcorp Holdings, Inc. ("Ralcorp") in its Medallion Foods division as a Senior Manager–Quality (Grade 17). Plaintiff was eligible for participation in the Ralcorp Severance Plan, an ERISA employee welfare benefit plan. ConAgra purchased Ralcorp on January 29, 2013 and expressly assumed the obligations and fiduciary duty of the Severance Plan. After the purchase by ConAgra, plaintiff continued as Senior

Manager–Quality (Grade 17) in the Medallion Foods division until April 14, 2014, when ConAgra sold Medallion Foods to Shearer's Foods, LLC, "thereby involuntarily terminating plaintiff." Complaint at 2, ¶ 4. Plaintiff's employment with Shearer's was terminated nine days later, on April 23, 2014.

Under Article II, Section B(1) of the Severance Plan, if an employee who qualifies for Ralcorp's Management Bonus Program and does not hold a position of Vice President or above is involuntarily terminated other than for cause within 24 months following a Change in Control, the employee will receive the equivalent of 52 weeks of base pay plus one week of base pay per year of service. Plaintiff alleges that Ralcorp's purchase by ConAgra constitutes a change in control triggering the Severance Plan, and that he is eligible for severance pay of approximately $136,000 representing 59 weeks of base pay, because ConAgra involuntarily terminated him other than for cause when it sold Medallion Foods to Shearer's Foods on April 14, 2014, within the 24-month window.

Plaintiff filed a claim for benefits under the Severance Plan on May 19, 2014. ConAgra and the Plan Administrator denied his claim on August 26, 2014. Plaintiff filed an appeal of the denial of benefits which was denied by ConAgra and the Plan Administrator on November 24, 2014. Plaintiff then filed this action alleging the defendants breached their fiduciary duties under ERISA by failing to (1) pay severance benefits as required under the Severance Plan (Count I); (2) pay plaintiff's attorney fees and costs on an ongoing, as-incurred basis (Count II); and (3) require Shearer's Foods to assume the Severance Plan (Count III).

## II. Legal Standard

The Eighth Circuit Court of Appeals has restated the applicable standards relating to summary judgment as follows:

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (internal citations and quotation marks omitted).

Where parties file cross-motions for summary judgment, as here, each summary judgment motion must be evaluated independently to determine whether a genuine dispute of material fact exists and whether the movant is entitled to judgment as a matter of law. Husinga v. Federal-Mogul Ignition Co., 519 F.Supp.2d 929, 942 (S.D. Iowa 2007). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." Wermager v. Cormorant Twp. Bd., 716 F.2d 1211, 1214 (8th Cir. 1983).

## III. Undisputed Facts[1]

*Plaintiff's Employment and Termination*

On January 29, 2013, ConAgra acquired Ralcorp. Prior to the acquisition, plaintiff was employed by Ralcorp's Medallion Foods division in the position of Senior Manager-Quality (Grade 17). Plaintiff continued working for ConAgra after the acquisition in the same position. In his employment with both Ralcorp and ConAgra, plaintiff was eligible to receive severance benefits under the Severance Plan, provided he met certain eligibility requirements. The Severance Plan is an employee benefit plan governed by ERISA.

After ConAgra purchased Ralcorp, plaintiff continued as Senior Manager–Quality (Grade 17) in the Medallion Foods division until April 14, 2014, when ConAgra sold Medallion Foods to Shearer's Foods, LLC. Nine days later, on April 23, 2014, Shearer's terminated plaintiff's employment for reasons that are not in the record. Under Section 10.3 of the Asset Purchase Agreement between ConAgra and Shearer's, former ConAgra employees later terminated by Shearer's were to be given credit for prior periods of service with Ralcorp and ConAgra as follows:

---

[1]The facts are taken from Plaintiff's Statement of Undisputed Facts Supporting Plaintiff's Motion for Summary Judgment as to Count I (Doc. 53), Defendants' Statement of Uncontroverted Material Facts in Support of their Motion for Summary Judgment (Doc. 47), Plaintiff's Response to Defendants' Statement of Uncontroverted Material Facts in Support of their Motion for Summary Judgment (Doc. 58), Defendants' Response in Opposition to Plaintiff's Statement of Undisputed Facts in Support of his Motion for Summary Judgment (Doc. 67), Defendants' Statement of Uncontroverted Material Facts in Support of their Response in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 66), Defendants' Statement of Uncontroverted Material Facts in Support of their Reply in Support of their Motion for Summary Judgment (Doc. 69), Defendants' Reply to Plaintiff's Response to Defendants' Statement of Uncontroverted Material Facts in Support of their Motion for Summary Judgment (Doc. 70), Plaintiff's Amended Statement of Undisputed Facts Supporting Plaintiff's Motion for Summary Judgment (Doc. 75), and Plaintiff's Reply to Defendants' Statement of Uncontorverted [sic] Material Facts in Support of their Response in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 76).

> [Shearer's] shall provide severance benefits to Hired Employees who are terminated by [Shearer's] . . . within the twelve (12) month period following Closing consistent with the severance benefits payable under the severance policy maintained by [Shearer's] with respect to its other similarly situated employees and . . . [Shearer's] shall give credit for prior periods of service with [ConAgra] or its Affiliates.

In connection with the termination of plaintiff's employment by Shearer's, plaintiff and Shearer's entered into a Separation and Release Agreement ("Separation Agreement") under which Shearer's agreed to (1) pay plaintiff's base salary for a period of 16 weeks; (2) pay the cost of plaintiff's coverage under Shearer's medical insurance plan through August 15, 2014; and (3) not oppose plaintiff's application for unemployment compensation benefits.

In paragraph 6 of the Separation Agreement, titled "Release," plaintiff agreed to release Shearer's "together with any and all affiliated or related businesses or corporations, as well as its and their predecessors, parents, subsidiaries, affiliates, agents" and others "from any and all claims, demands, . . . proceedings, costs, expenses, causes of action, orders, obligations, contracts, agreements . . . and liabilities whatsoever, . . . arising from the beginning of time through and including the Effective Date" of the Separation Agreement, including but not limited to "any and all Claims and/or demands for back pay, reinstatement, hire or re-hire, front pay, stock options, group insurance, or employee benefits of whatsoever kind, . . . any and all Claims arising out of or relating to the cessation of Employee's employment" with Shearer's, including but not limited to claims under ERISA. Administrative Record ("AR"), Defs.' Ex. A, AR000032.

*Terms of the Severance Plan*

The Severance Plan states at Article II, Section B(1) that "if an employee is involuntarily terminated by the Company other than for Cause . . . within 24 months following a Change in Control . . . then the Employee will receive the following: … Fifty-two (52) weeks of Base Pay plus one (1) week of Base Pay per year of service." The Severance Plan does not define the term

"involuntarily terminated." The Severance Plan also states at Article II, Section B(2) that other benefits and payments are due to employees who are terminated in the context of a Change in Control, including a company contribution towards the employee's COBRA health insurance and outplacement services.

The acquisition of Ralcorp by ConAgra on January 29, 2013 constituted the required "Change in Control" as that term is defined in the Severance Plan, and ConAgra assumed the Severance Plan when it acquired Ralcorp. Plaintiff was employed by ConAgra in the Medallion Foods division until April 14, 2014, and his base salary was $119,885.00 per year when his employment with ConAgra ended.

The terms of the sale of the Medallion Foods division from ConAgra to Shearer's are outlined in the Asset Purchase Agreement. The sale of the Medallion Foods division from ConAgra to Shearer's occurred within the 24-month period following a "Change in Control" described in the Severance Plan. Plaintiff was terminated from his employment with Shearer's on April 23, 2014, less than 24 months after the Change in Control.

If a dispute arises between ConAgra Foods and an employee over whether benefits are owed, the employee must file a claim for benefits in accordance with the procedure outlined in Article IV, Section A of the Severance Plan. If the Plan Administrator denies the claim and the employee disagrees with the denial, the employee may appeal to the Benefit Administration Committee ("EBAC"). The appeal must state why the employee believes his or her claim should have been approved and must be supported by relevant information or documents.

Article IV, Section A.8. of the Severance Plan gives the Plan Administrator and the EBAC "the exclusive discretionary authority to construe and interpret the [Severance] Plan [and] to decide all questions of eligibility for benefits," including the discretion to decide whether an employee was

"involuntarily terminated." The Severance Plan states that the Plan Administrator and EBAC's "decisions on such matters are final, conclusive and binding on all parties," and "[a]ny interpretation or determination made pursuant to such discretionary authority shall be upheld on judicial review, unless it is shown that the interpretation or determination was an abuse of discretion (i.e., arbitrary and capricious)."

The attorneys' fees provision in the Severance Plan—Article IV, Section B—states:

In connection with or after a Change in Control, the Company shall pay to the Employee as incurred all legal and accounting fees and expenses incurred by the Employee in seeking to obtain or enforce any right or benefit provided by this Plan under Article II(B), unless the Employee's claim is found by a court of competent jurisdiction to have been frivolous. Any such reimbursements or payments that are taxable to the Employee shall be subject to the following restriction: each reimbursement or payment must be paid no later than the last day of the calendar year following the calendar year during which the expense was incurred or tax was remitted, as the case may be.

*Plaintiff's Claim for Severance Benefits*

On May 19, 2014, after plaintiff's employment was terminated by Shearer's, he made a claim to the Plan Administrator for benefits pursuant to the Severance Plan. Vickery alleged that ConAgra involuntarily terminated his employment other than for Cause on April 14, 2014, when it closed on its sale of Medallion Foods to Shearer's, that the termination fell within the 24-month period following the Change in Control effected by ConAgra's purchase of Ralcorp, and that he otherwise met the requirement for a "Termination in the Context of a Change in Control" under the Severance Plan. Vickery claimed lump sum severance in the amount of 59 weeks of base pay ($136,023.37), twelve weeks of ConAgra-subsidized COBRA health care continuation benefits, lump sum acceleration of performance bonuses, and outplacement services for two years.

ConAgra as Plan Administrator, through its Executive Vice President and Chief Human Resources Officer Nicole B. Theophilus, denied plaintiff's claim for severance benefits on August

26, 2014. The stated reason for denial was that the Plan Administrator determined the circumstances of plaintiff's "purported termination" did not qualify him for severance benefits because in connection with the sale of Medallion Foods, plaintiff "was offered and accepted continuing employment that was indistinguishable from his employment with Ralcorp/ConAgra Foods. He suffered no period of unemployment or lack of work because of the transfer of ownership." The denial also noted that plaintiff's "seniority with Ralcorp/ConAgra Foods was honored when he already received severance compensation from Medallion."

On September 26, 2014, plaintiff appealed the denial of his claim for benefits under the Severance Plan. On appeal, plaintiff reiterated his position that ConAgra involuntarily terminated his employment other than for Cause on April 14, 2014, when it closed on the sale of Medallion Foods to Shearer's, that the termination fell within the twenty-four month period following the Change in Control effected by ConAgra's purchase of Ralcorp, and that he otherwise met the requirement for a "Termination in the Context of a Change in Control" under the Severance Plan. Plaintiff's appeal also challenged the basis of the Plan Administrator's decision to deny his claim, arguing that "nothing in the Severance Plan disqualifies an employee for suffering no period of unemployment or lack of work after termination. Mitigation is not a factor for 'Termination in the Context of a Change in Control' under the Severance Plan." Plaintiff also alleged that his "employment with the successor company clearly was never contemplated by the buyer," as he was terminated from Shearer's on April 23, 2014.

The EBAC met on November 21, 2014 to review plaintiff's appeal, and upheld the Plan Administrator's denial of plaintiff's claim for severance benefits. The members of the EBAC were Nicole Theophilus, Charlie Salter, the Vice President of Compensation and Benefits, and Bart Karlson, the Senior Director of Human Resources.

The EBAC explained its reasoning for denying plaintiff's appeal, stating first that it had the discretionary authority pursuant to under Article IV, Section A(8) of the Plan to interpret and construe the Plan. The EBAC stated its conclusion that plaintiff was not entitled to severance benefits under the Plan because (1) plaintiff was not "involuntarily terminated" as required by the Plan to obtain benefits because he accepted and continued employment with Shearer's under terms and conditions that were "nearly identical in all material respects to his employment with [ConAgra] immediately prior to the sale"; (2) plaintiff's "employment continued interrupted and without incurring a termination of employment as required by the Plan"; and (3) the Sales Agreement between ConAgra and Shearer's was written to protect plaintiff and others similarly situated in the event employment with Shearer's ended following the sale, and if plaintiff were to receive severance benefits from both ConAgra and Shearer's, "he would be receiving an unjust windfall that was neither contemplated nor supported by the Plan." AR000065-66.

None of the individuals involved in making the decisions on plaintiff's claims for benefits exercised control over Severance Plan funds at any time, had a financial interest in the outcome of the claims process, or received a bonus or other compensation based on the outcome of any claim decision related to the Severance Plan.

*Plaintiff's Claim for Interim Attorneys' Fees*

The attorneys' fees provision in the Severance Plan – Article IV, Section B – states:

**Legal Fees/Accounting Expenses**. In connection with or after a Change in Control, the Company shall pay to the Employee as incurred all legal and accounting fees and expenses incurred by the Employee in seeking to obtain or enforce any right or benefit provided by this Plan under Article II(B), unless the Employee's claim is found by a court of competent jurisdiction to have been frivolous. Any such reimbursements or payments that are taxable to the Employee shall be subject to the following restriction: each reimbursement or payment must be paid no later than the last day of the calendar year following the calendar year during which the expense was incurred or tax was remitted, as the case may be.

AR000012.

Plaintiff first contacted his attorneys in connection with this matter on April 17, 2014, before he signed the Separation Agreement with Shearer's, and a little over thirty days before he filed his initial claim for severance benefits with ConAgra on May 19, 2014.

*Plaintiff's Claim for Breach of Fiduciary Duty - Count III*

The "successors and assigns" provision of the Severance Plan – Article IV, Section G – states:

> **<u>Successors and Assigns</u>**.  This Plan shall be binding upon the Company and any successor to the Company, including any persons acquiring directly or indirectly all or substantially all of the business or assets of the Company by purchase, merger, consolidation, reorganization, or otherwise.  Any such successor shall thereafter be deemed to be the "Company" for purposes of this Plan, and the term "Company" shall include Ralcorp Holdings, Inc. to the extent advantageous to the Employees by providing them with the benefits intended under this Plan.  However, this Plan and the Company's obligations under this Plan are not otherwise assignable, transferable, or delegable by the Company.  By written agreement, the Company shall require any successor to all or substantially all of the business or assets of the Company expressly to assume and agree to honor this Plan in the same manner and to the same extent the Company would be required to honor this Plan if no such succession had occurred.

AR000012-13.  The "Overview" section of the Plan, Article I, Section A, defines the term "Company" to mean "Ralcorp Holdings, Inc. or its participating subsidiaries and affiliates." AR000001.

The Asset Purchase Agreement between Medallion Foods, ConAgra and Shearer's relates to one facility only, located in Newport, Arkansas.  Medallion's Newport, Arkansas facility was one of more than forty that ConAgra acquired when it purchased Ralcorp.  Medallion Foods comprised 2% of Ralcorp's total assets at the time of the sale of Medallion to Shearer's.

Article X, Section 10.3 of the Asset Purchase Agreement only required Shearer's to provide severance benefits to former ConAgra employees consistent with the terms of its own severance

policies, while giving credit for prior periods of service with ConAgra. Shearer's severance policy, as reflected in the Separation Agreement, provided plaintiff with sixteen weeks of his base compensation and sixteen weeks of fully paid COBRA health coverage. Under ConAgra's Severance Plan, plaintiff claimed entitlement to fifty-nine weeks of base pay, twelve weeks of subsidized COBRA health coverage, and two years of outplacement services.

## IV. Discussion

### A. Standard of Review

The Plan provides that ConAgra, as a plan fiduciary, shall have "the exclusive discretionary authority to construe and interpret the [Severance] Plan [and] to decide all questions of eligibility for benefits." Where plan language grants an administrator this type of discretion, the Court must review the "administrator's construction of the plan terms for an abuse of discretion[.]" Silva v. Metropolitan Life Ins. Co., 762 F.3d 711, 717 (8th Cir. 2014) (quoted case omitted); Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989). "[A]n administrator's decision is upheld if it is reasonable, that is, supported by substantial evidence . . . [which] means 'more than a scintilla but less than a preponderance.'" Silva, 762 F.3d at 717 (quoting Darvell v. Life Ins. Co. of N. Am., 597 F.3d 929, 934 (8th Cir. 2010) (citations omitted)).

> "Under the abuse of discretion standard of review, "we must uphold [a plan administrator's] decision so long as it is based on a reasonable interpretation of the Plan and is supported by substantial evidence." Hampton v. Reliance Standard Life Ins. Co., 769 F.3d 597, 600 (8th Cir. 2014). A decision is reasonable "if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." Midgett v. Wash. Grp. Int'l Long Term Disability Plan, 561 F.3d 887, 897 (8th Cir. 2009) (quotation omitted). . . . . Where a plan fiduciary offered a reasonable interpretation of a disputed plan provision, "courts may not replace it with an interpretation of their own -- and therefore cannot disturb as an 'abuse of discretion' the challenged benefits determination." King, 414 F.3d at 999 (quotation and alteration omitted)."

Ingram v. Terminal Railroad Ass'n of St. Louis Pension Plan for Nonschedule Employees, 812 F.3d 628, 634 (8th Cir. 2016). "Any reasonable decision will stand, even if the court would interpret the language differently as an original matter." Manning v. American Republic Ins. Co., 604 F;3d 1030, 1038 (8th Cir. 2010) (cited cases omitted).

Here, ConAgra was responsible both for determining participants' eligibility for benefits and also for paying those benefits. "This dual role creates a conflict of interest." Silva, 762 F.3d at 717 (citing Manning v. American Rep. Ins. Co., 604 F.3d 1030, 1038 (8th Cir. 2010)). Where such a conflict exists it can "trigger a less deferential standard of review" by reviewing courts. Id. at 718; see Firestone, 489 U.S. at 115. While the Eighth Circuit "has not definitively articulated what that less deferential standard of review should be, . . . 'a reviewing court should consider that conflict as a factor' when determining if an administrator has abused its discretion." Silva, 762 F.3d at 718. "The simple fact a conflict exists, however, does not eliminate the administrator's discretion or change [a court's] review of the administrator's decision to de novo review." Yafei Huang v. Life Ins. Co. of N. Am., 801 F.3d 892, 898 (8th Cir. 2015).

B. Count I - § 1132(a)(1)(B) Claim

Section 1132(a)(1)(B) authorizes a plan participant such as plaintiff to bring a civil action "to recover benefits due to him under the terms of his plan." In Count I, plaintiff asserts a claim for severance benefits under § 1132(a)(1)(B). Both parties moves for summary judgment on Count I. Defendants argue that plaintiff is not entitled to "recover benefits due to him under the terms of his plan" because the Plan's terms required plaintiff to have been involuntarily terminated in order to be eligible for severance benefits. Plaintiff argues that he was involuntarily terminated when ConAgra sold Medallion Foods to Shearer's, and that § 1132(a)(1)(B) entitles him to severance benefits owed under the Plan.

To succeed, plaintiff must show that ConAgra's determination he was not "involuntarily terminated" when the sale occurred was an abuse of discretion. See Silva, 762 F.3d at 718. Five factors are relevant to determining whether the plan administrator's decision is an abuse of discretion: "(1) whether the administrator's language is contrary to the clear language of the plan; (2) whether the interpretation conflicts with the substantive or procedural requirements of ERISA; (3) whether the interpretation renders any language in the plan meaningless or internally inconsistent; (4) whether the interpretation is consistent with the goals of the plan; and (5) whether the administrator has consistently followed the interpretation." Manning, 604 F.3d at 1041-42. In addition to the five factors, the Court must "keep in mind [ConAgra's] conflict and weigh that accordingly." Silva, 762 F.3d at 718.

Here, plaintiff's § 1132(a)(1)(B) claim turns on the following question: Was it an abuse of discretion for ConAgra to interpret the undefined Plan term "involuntarily terminated [by the Company]" to mean that where Medallion Foods' purchaser initially retained plaintiff in his same position, such that he suffered no period of unemployment as a result of the purchase, plaintiff was not "involuntarily terminated" under the Plan when the purchaser ended his employment nine days later?

Plaintiff contends he is entitled to severance benefits under the plain language of the Plan because it provides that if an employee is involuntarily terminated other than for cause within 24 months of a Change in Control, the employee is entitled to severance pay and other benefits. Plaintiff asserts it is uncontroverted that (1) the sale of Ralcorp to ConAgra in 2013 constituted the requisite Change in Control, and (2) he was terminated other than for cause within twenty-four months of that Change in Control, and therefore under the Plan's plain language he is entitled to

severance pay and benefits.  Plaintiff argues that nothing in the Plan's language requires him to suffer a period of unemployment or a lack of work to be eligible for severance pay and benefits.

Defendants respond there is substantial evidence to support their determination that plaintiff was not eligible for severance benefits under the Plan because he did not meet its eligibility criteria. Defendants argue that plaintiff was not "involuntarily terminated" where he accepted employment with Shearer's, experienced no gap in employment because of the sale of Medallion Foods, and maintained the same job title, base compensation and benefit entitlement.[2]  Defendants cite several Eighth Circuit cases in support of their argument with respect to the requirement of a period of unemployment: Lakey v. Remington Arms Co., 874 F.2d 541 (8th Cir. 1989); Harper v. R.H. Macy & Co., 920 F.2d 544, 545 (8th Cir. 1990) (holding former employer did not permanently terminate employees within meaning of the ERISA benefit plan to entitle them to benefits when they continued in their employment with the purchaser uninterrupted and on comparable terms); Agee v. Armour Foods Co., 834 F.2d 144 (8th Cir. 1987) (employees laid off by initial employer and immediately rehired by employee's successor are not entitled to severance pay); Acton v. Tosco, 815 F.2d 1161 (8th Cir. 1986) (same); Pabst Brewing Co. v. Anger, 610 F. Supp. 214 (D. Minn. 1985), aff'd, 784 F.2d 338 (8th Cir. 1986) (same).

The defendants state that because the term "involuntarily terminated" is not defined in the Plan, the Plan Administrator and EBAC have the exclusive authority to interpret its meaning, and their interpretation was not an abuse of discretion where they considered that (1) plaintiff's role before and after the sale to Shearer's was the same; (2) his employment continued uninterrupted;

_____

[2]Plaintiff argues that he did not have the same benefit entitlement with Shearer's because it did not offer the same severance benefits as Ralcorp/ConAgra.  As stated above in the Facts section, plaintiff was entitled to 59 weeks of base compensation under the Severance Plan, and received only 16 weeks of base compensation under the Separation Agreement he signed with Shearer's.

and (3) he experienced no change in his base compensation or benefit entitlement. Defendants also assert that other Plan provisions indicate the Plan's goal was to assist employees during periods of unemployment and that an individual must be unemployed to receive benefits.

The defendants also state it was not an abuse of discretion to deny plaintiff's claims for benefits because the Plan Administrator and EBAC also considered that plaintiff filed a claim for severance benefits only after he received a severance package from Shearer's that gave credit to his prior periods of service with ConAgra and Ralcorp. Defendants argue that plaintiff is not entitled to receive severance benefits from both Shearer's and ConAgra under the facts of this case, and to award "double benefits" would constitute an unfair windfall.[3] Finally, defendants state that the Plan Administrator and EBAC considered that the Separation Agreement plaintiff signed with Shearer's upon the termination of his employment listed as included releasees all of Shearer's predecessors.

As an initial matter, none of the Eighth Circuit cases defendants cite in support of their assertion that a period of unemployment or lack of work is required under the Plan are controlling under the facts of this case. Although the Eighth Circuit "has frequently held that the sale or discontinuance of a business does not entitle employees to benefits under a severance plan if a new or successor employer continues their employment without interruption under substantially identical terms and conditions," Schroeder v. Phillips Petroleum Co., 17 F.3d 1147 (8th Cir. 1994), in each case the Eighth Circuit focused on the plan language at issue in the context of the facts presented. "The plan, in short, is at the center of ERISA." US Airways, Inc. v. McCutchen, 133 S. Ct. 1537,

_____

[3]While it would be an unfair windfall for plaintiff to receive a full 59 weeks of severance pay from defendants under these circumstances, the Court disagrees with defendants' assertion that plaintiff's recovery of any Plan severance benefits would necessarily constitute a windfall. As previously stated, plaintiff received 16 weeks of base severance pay from Shearer's, but was entitled to 59 weeks of base severance pay under the Plan. It would not constitute a windfall if plaintiff were to receive severance pay under the Plan, reduced by the amount of severance pay and the value of the additional four weeks of COBRA benefits he received under the Separation Agreement.

1548 (2013). A "claim for separation benefits is really a claim to enforce a contract." <u>Anstett v.</u>
<u>Eagle-Pilcher Indus., Inc.</u>, 203 F.3d 501, 403 (7th Cir. 2000).

In contrast to the present case where the focus is on the undefined term "involuntarily
terminated," express plan language in each of defendants' cited cases established that a lack of work
or a period of unemployment was a prerequisite to entitlement to severance benefits, or specifically
disqualified employees who had a continuity of employment with a successor employer.[4] Because
the Severance Plan lacks this type of specific language, defendants cannot prevail merely by citing
to Eighth Circuit decisions. The Court believes the instant case presents a closer question as to

---

[4]For example, in <u>Lakey v. Remington Arms Co., Inc.</u>, 874 F.2d 541, 545 (8th Cir. 1989), the
severance plan provided in pertinent part:

    4. Severance pay payments may not be made under any conditions unless and until:

        a. the employee is *terminated* from the permanent roll of the company, and

        b. the termination is caused by *lack of work*.

The Eighth Circuit concluded that both a termination and a lack of work "must be present to activate
[the] severance pay policy," and that the "language in the policy document requiring a lack of work
as a prerequisite to severance pay is clear." <u>Id.</u> In <u>Harper v. R.H. Macy & Co., Inc.</u>, 920 F.2d 544,
545 (8th Cir. 1990), the plan provided a severance allowance when an employee is "permanently
terminated or laid-off for periods that exceed 90 days." In <u>Agee v. Armour Foods Co.</u>, 672 F. Supp.
1210, <u>aff'd</u>, 834 F.2d 144 (8th Cir. 1987) (per curiam), the policy provided separation pay to full-
time employees whose employment was terminated by Armour through no fault of the employee,
but specified that no separation pay would be paid to employees who refused a comparable job
offered by Armour, a subsidiary or successor company, "or if there is continuity of employment with
the successor company." 672 F. Supp. at 1219. In <u>Pabst Brewing Co. v. Anger</u>, 784 F.2d 338, 338
(8th Cir. 1986) (per curiam), the Eighth Circuit stated the "question presented is whether the former
Pabst employees suffered a 'layoff,' defined as 'a permanent, involuntary separation without cause,'
when they ceased to be employees of Pabst upon transfer of the Olympia brewery to Stroh's." <u>Id.</u>
Where the employees continued to work without interruption, some at a higher rate of pay –
although they lost certain Pabst benefits including the right to participate in its employee stock
ownership plan – the Eighth Circuit held it was reasonable for Pabst to interpret the term "layoff"
as not applying to this set of facts. <u>Id.</u> Finally, in <u>Acton v. Tosco Corp.</u>, 815 F.2d 1161, 1162 (8th
Cir. 1986) (per curiam), the severance pay policy stated that "[a]t such times that layoffs, regretfully,
become necessary due to shifts in business direction, economic conditions, or other reasons, it is
Tosco's policy to ease the transition for those employees who have been laid off by providing
severance pay[.]" The Eighth Circuit concluded it "cannot be said that Tosco's decision to deny
benefits contravened the plain terms of the plan. Read as a whole, the severance plan anticipated
that the recipient of the benefits be without employment." <u>Id.</u> at 1162-63.

whether the defendants' decision to deny benefits was reasonable, and turns to consideration of the five relevant factors.

First, the defendants' interpretation is not contrary to the clear language of the Plan, although it does read into the Plan a requirement that employees must suffer a period of unemployment in order to receive severance benefits. Article II.B.1. of the Plan states that participants may be eligible for benefits if they are "involuntarily terminated" within 24 months following a Change in Control, or if they terminate their employment for "Good Reason." While "Change in Control" and "Good Reason" are defined terms in the Plan, "involuntarily terminated" is not. As a result, the term does not have a clear meaning and under Article IV.A.8., the Plan Administrator and the EBAC have the exclusive authority to interpret its meaning.

Thus, the question is whether the Plan Administrator and the EBAC's interpretation of "involuntary termination" is an abuse of discretion. Here, the Plan Administrator and the EBAC considered several undisputed facts when deciding to deny plaintiff's claim for benefits: (1) plaintiff's position before and after the sale to Shearer's was the same; (2) his employment continued uninterrupted; (3) he experienced no change in his base compensation; and (4) he received severance pay from Shearer's that was based on his years of employment with Ralcorp/Conagra. The Court finds these facts constitute "substantial evidence" to support the Plan Administrator and the EBAC's determination that plaintiff was not "involuntarily terminated" within the meaning of the Plan.

Second, the defendants' interpretation does not conflict with the substantive or procedural requirements of ERISA, because "ERISA does not create any substantive entitlement to employer-provided severance benefits or any other kind of welfare benefits," Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1996), and ERISA's procedural requirements regarding the claims

and review process, see 29 U.S.C. § 1133, 29 C.F.R. § 2560.503-1(f) and (g), were satisfied through the internal procedures under the Plan.

Third, the Plan Administrator and the EBAC's interpretation does not render any language in the Plan meaningless or internally inconsistent. It also appears to be consistent with inferences that can be drawn from other Plan provisions. These provisions include requirements in the general eligibility section, Article I, that an employee return all company property within ten days of termination, Art. I.B.2., and cooperate in the efficient and orderly transfer of his or her duties to other employees, Art. I.B.4., which would not apply to a person in plaintiff's position who continues working at the same facility in the same position. Other severance benefits provided by the Plan, COBRA healthcare continuation coverage and outplacement services, are also consistent with the interpretation that an employee must suffer a period of unemployment or lack of work to qualify for the benefits, as a person who did not become unemployed is less likely to need these types of benefits. In addition, the COBRA healthcare benefits are only payable "for a period of 12 weeks . . . or until such time that Employee retains group health coverage under a subsequent employer plan." Art. II.3.a. This language contemplates that the person would be unemployed for a period of time.

As to the fourth factor, the Plan does not expressly articulate its goals. When read in its entirety and considering the provisions discussed immediately above, the Plan is susceptible to the interpretation that it is intended to assist employees during periods of unemployment. As such, the interpretation that an employee must suffer a period of unemployment or lack of work to qualify for receipt of severance pay and benefits cannot be said to be inconsistent with the Plan's goals.

There is no evidence in the record as to whether the Plan Administrator has consistently followed the interpretation it implemented here, so the fifth factor is neutral in determining reasonableness.

Finally, the Court considers the conflict of interest that exists as a result of ConAgra's dual role of determining eligibility for benefits and being the entity responsible for paying those benefits. See Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008). The significance of this factor depends on the circumstances of the particular case. Id. When an insurer has a history of biased claims administration, for example, the conflict may be given substantial weight. Id. at 117. When an insurer has taken steps to reduce potential bias and promote accurate eligibility determinations, the conflict should be given much less weight. Id.

Here, the record does not contain any evidence of biased claims administration. The defendants presented evidence that none of the ConAgra employees involved in the claims or review process on plaintiff's claim for severance benefits (1) exercised control over Severance Plan funds at any time, (2) had a financial interest in the outcome of the claims process, or (3) received a bonus or other compensation based on the outcome of any claim decision related to the Plan. Plaintiff contends it is "naïve and disingenuous" for defendants to assert that the committee, Plan Administrator or EBAC were "walled off" from the financial repercussions of claim administration on ConAgra, pointing to evidence that at the time his claim and appeal were denied, ConAgra's website stated that its operating profit had decreased significantly, it was facing "continued profit challenges," and it was "disappointed with fiscal 2014 overall, and . . . [had] a very focused sense of urgency directed toward improving [its] results." Plaintiff also asserts that the appeal process was not separated from the claim process because the ConAgra employee who acted as Plan Administrator also served as a member of the EBAC, and one of the members of the Severance Plan

Committee emailed the EBAC a summary document about the appeal "including recommendations," and stated she would appear at the EBAC meeting to "walk through the summary document" and answer questions.

The Court takes ConAgra's conflict of interest into account and recognizes that the defendants had a financial interest in denying plaintiff's claim. The Court also recognizes that ConAgra took steps to reduce potential bias by separating the persons involved in the claims and review process from any financial role in connection with the Plan. Plaintiff does not offer any legal authority to support his assertion that the conflict of interest is exacerbated by the overlap and interaction of personnel between the claims and review processes. See, e.g., Brandis v. Kaiser Aluminum & Chem. Corp., 47 F.3d 947, 950 (8th Cir. 1995) (employee can serve a dual role as employee and plan fiduciary) (citing 29 U.S.C. § 1108(c)(3)); see also Barnhart v. UNUM Life Ins. Co., 179 F.3d 583, 588 (8th Cir. 1999) ("ERISA itself contemplated the use of fiduciaries who might not be entirely neutral"). The Court gives the conflict of interest some weight as one factor in the analysis, but finds that its existence does not alter the outcome under the abuse of discretion analysis.

Based on the relevant factors as discussed above, analyzed under the abuse of discretion standard with the defendants' conflict of interest in mind, the Court ultimately concludes the defendants did not abuse their discretion in denying plaintiff's claim for severance pay and benefits, and the decision was reasonable as it is supported by substantial evidence. Although the Court might well have reached a different decision under a *de novo* standard of review, the defendants' interpretation of the term "involuntarily terminated" as requiring an employee to suffer a period of unemployment or lack of work to be eligible for severance pay is reasonable under the facts of this case: A reasonable person *could* have reached the same decision, and it is supported by substantial

evidence as that term is defined by the Eighth Circuit.  See <u>Silva</u>, 762 F.3d at 717.  The defendants are therefore entitled to summary judgment on plaintiff's ERISA § 1132(a)(1)(B) claim in Count I.

In the alternative, if it was an abuse of discretion for defendants to interpret the term "involuntarily terminated" to require a period of unemployment as eligibility for severance benefits under the Plan, the Court finds that plaintiff released any claim against the defendants for Plan severance benefits by virtue of the release provision contained in the Separation Agreement.  That broadly worded provision released Shearer's and any of its predecessors from any and all claims arising out of or relating to the cessation of plaintiff's employment with Shearer's, including claims for employment benefits and causes of action under ERISA.

C.  <u>Count II - Breach of Fiduciary Duty - Attorneys' Fees</u>

In Count II, plaintiff asserts a breach of fiduciary claim under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), for defendants' failure to pay his attorneys' fees, as incurred, in compliance with Article IV, Section B of the Severance Plan.

In relevant part, 29 U.S.C. § 1132(a) allows a civil action to be brought:

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

. . . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. § 1132(a)(1), (3).

The relevant Plan language states:

**Legal Fees/Accounting Expenses**.  In connection with or after a Change in Control, the Company shall pay to the Employee as incurred all legal and accounting fees and expenses incurred by the Employee in seeking to obtain or enforce any right or benefit provided by this Plan under Article II(B), unless the Employee's claim is found by a court of competent jurisdiction to have been frivolous.  Any such reimbursements or payments that are taxable to the Employee shall be subject to the following restriction: each reimbursement or payment must be paid no later than the last day of the calendar year following the calendar year during which the expense was incurred or tax was remitted, as the case may be.

AR000011.

Plaintiff asserts that under the plain language of Article IV.B., he is entitled to payment "as incurred [of] all legal and accounting fees and expenses incurred by the Employee in seeking to obtain or enforce any right or benefit provided by [the] Plan under Article II(B), unless the Employee's claim is found to be frivolous . . . ."  Plaintiff moves for summary judgment on this claim asserting that the defendants have breached their fiduciary duty under ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), by failing and refusing to pay his attorneys' fees as incurred.  Plaintiff contends that because he has made a claim for severance pay and benefits, which has not been found by a court to be frivolous, he meets all requirements of the Plan's language and is entitled to summary judgment on Count II.

Defendants assert they are entitled to summary judgment on plaintiff's breach of fiduciary duty claim for the denial of his attorneys' fees for two reasons: (1) an ERISA plaintiff must exhaust his administrative remedies before filing a claim for breach of fiduciary duty, and here plaintiff failed to exhaust administrative remedies with respect to his claim for attorneys' fees; and (2) plaintiff cannot meet his burden to prove a breach of fiduciary duty, as he has no evidence the denial was an abuse of discretion because he did not undertake any discovery into the Plan Administrator's rationale for denying his claim for attorneys' fees.

In support of their administrative exhaustion argument, defendants cite Goewert v. Hartford Life & Accident Insurance Co., 442 F.Supp.2d 724, 728 n.1 (E.D. Mo. 2006), Lindemann v. Mobil Oil Corp., 79 F.3d 647, 649 (7th Cir. 1996), and Mason v. Continental Group, Inc., 763 F.2d 1219, 1227 (11th Cir. 1985). Defendants assert that although the Severance Plan requires a claimant to exhaust administrative remedies before filing an action in court, plaintiff's sole administrative claim makes no mention of a request for or failure to pay attorneys' fees, and only states plaintiff's claim for entitlement to severance pay and benefits. Defendants state that the first time plaintiff made a request for attorneys' fees was on the day he filed this action, and therefore this claim is barred.

Plaintiff responds that the Plan's clear and unambiguous language does not require administrative exhaustion before filing a legal claim related to attorneys' fees. Plaintiff states that while the Plan expressly requires administrative exhaustion for benefit claims, it is silent as to any exhaustion requirement for other, non-benefit claims. Plaintiff points to the Plan's administrative exhaustion section, Article IV, Section A, titled "Claims Procedures When Your Benefits Are Disputed," and contends that the benefits the Plan was designed to provide are severance benefits. Thus, plaintiff argues that under the Plan's plain language, the administrative exhaustion procedures apply only to claims for severance benefits and not to claims for attorneys' fees. Plaintiff also states that other language in the Plan's administrative exhaustion section supports his position because it contains references to disputes over entitlement to benefits, claims for benefits, claim determinations, and adverse benefit determinations, but does not include any references to non-benefit claims such as for attorneys' fees.

Plaintiff also responds that this count involves a statutory claim, and argues that exhaustion is not required of ERISA statutory claims, citing Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc., 770 F.3d 1282, 1294 (9th Cir. 2014). In addition, plaintiff responds that

the Plan's attorneys' fees provision implicitly contemplates that legal action has already been taken to enforce a participant's rights under the Plan and, therefore, requiring administrative exhaustion of his attorneys' fee claim is "nonsensical" because he could not simultaneously exhaust his claims for benefits and for attorneys' fees. Plaintiff also asserts, however, that he actually exhausted his attorneys' fees claim by sending ConAgra two invoices for attorneys' fees in September and December 2014, prior to filing this action in May 2015.

Defendants respond that plaintiff's assertion the administrative exhaustion procedures apply only to claims for severance benefits is actually an argument that the Plan did not explicitly put him on notice of his obligation to administratively exhaust his breach of fiduciary claims. Defendants state that the Eighth Circuit has held exhaustion is required whenever a plan provides a contractual review procedure, citing Wert v. Liberty Life Assurance Co. of Boston, Inc., 447 F.3d 1060, 1062-63 (8th Cir. 2006). Defendants state that as long as a plan participant has notice of the review procedure, he is required to exhaust administrative remedies "even if the plan, insurance contract, and denial letters do not explicitly describe the review procedure as mandatory or as a prerequisite to suit." Id.

In Wert, the Eighth Circuit reiterated and clarified its position that exhaustion of contractual review procedures is a prerequisite to bringing a suit in federal court for denial of benefits. The exhaustion requirement "stems from the sound policy of not wanting courts to review plan administrators' decisions based on initial, often succinct denial letters in the absence of complete records" and serves the purposes of "giving claims administrators an opportunity to correct errors, promoting consistent treatment of claims, providing a non-adversarial dispute resolution process, and decreasing the cost and time of claims resolution." Id. at 1066 (internal quotation omitted). The

Eighth Circuit has "consistently imposed an exhaustion requirement where there is notice and where there is no showing that exhaustion would be futile." Id. at 1065.

Subsequent to Wert, this Court held that ERISA breach of fiduciary duty claims are subject to the administrative exhaustion requirement, even in the absence of plan language providing explicit notice of the requirement. Goewert, 442 F.Supp.2d at 728 n.1 (citing Simmons v. Willcox, 911 F.2d 1077, 1081 (5th Cir. 1981), and Drinkwater v. Metropolitan Life Ins. Co., 846 F.2d 821, 825 (1st Cir. 1988)). The Court adheres to its prior holding in Goewert and concludes plaintiff was obligated to administratively exhaust his claim for attorneys' fees.

In light of the foregoing Eighth Circuit and district precedent, plaintiff's argument that the Plan's plain language does not require exhaustion of his attorneys' fee claim must fail. The Court is also not persuaded by plaintiff's citation to the Ninth Circuit's decision in Spinedex, 770 F.3d 1282. While the Spinedex case is not binding precedent on this Court, it is readily distinguishable. The Ninth Circuit concluded the plaintiffs' complaint was not merely a disguised claim for benefits because it sought injunctive relief that would "clearly . . . benefit the Plans," id. at 1294, and alleged the defendant committed "willful and systematic" statutory violations of not following claims regulations, not considering all relevant information, inappropriately denying claims, and inappropriately delaying payment on valid claims.[5] Id. As a result, the Ninth Circuit concluded exhaustion was not required. Id. Here, in contrast, plaintiff does not seek injunctive relief that would benefit the Plan, does not allege willful and systematic conduct by the defendants, and asserts a claim for attorneys' fees under the Plan that he characterizes as a breach of fiduciary duty.[6]

---

[5]See Spinedex Physical Therapy, U.S.A., Inc. v. United Healthcare of Ariz., Inc., 2012 WL 8147128, at * 4 (D. Ariz. Oct. 24, 2012).

[6]The Court questions plaintiff's unsupported assertion that his claim for attorneys' fees under the Severance Plan's Legal Fees/Accounting Fees provision is not a claim for benefits under the

Plaintiff's assertion that administrative exhaustion is not required because the Plan implicitly contemplates that a legal action will have been filed before a claim for attorneys' fees is made is not supported by evidence or legal authority and is unconvincing. The facts of plaintiff's own case indicate the assertion is faulty, because the record evidence shows that plaintiff obtained legal counsel and began incurring attorneys' fees in April 2014, prior to filing his initial claim for benefits. Plaintiff could have made claims for his attorneys' fees *as incurred* – the relief he seeks in Count II – and also administratively exhausted his claim for attorneys' fees.

Finally, plaintiff's assertion that he exhausted his attorneys' fee claim by sending pre-suit invoices to ConAgra is not supported by any record evidence. Unsupported statements of counsel are not evidence and cannot support summary judgment. The Court therefore does not address this assertion further.

In summary, the Severance Plan has an exhaustion requirement, plaintiff was on notice of the requirement, and plaintiff failed to follow the Plan's requirement with respect to his breach of fiduciary duty claim for attorneys' fees. "[W]here a claimant fails to pursue and exhaust

Plan. The defendants' obligation to pay plaintiff's attorneys' fees is derived exclusively from the Severance Plan and therefore could be considered one of the benefits the Plan provides. Section 1132(a)(3) "permits plan participants and beneficiaries to 'seek equitable remedies in [their] individual capacit[ies] for a breach of fiduciary duty not specifically covered by other enforcement provisions of section 1132.'" Pichoff v. QHG of Springdale, Inc., 556 F.3d 728, 731 (8th Cir. 2009) (alterations in original) (quoting Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 943 (8th Cir. 1999), and citing Varity Corp. v. Howe, 516 U.S. 489, 512 (1996), and 29 U.S.C. § 1104). However, "where a plaintiff is provided adequate relief by the right to bring a claim for benefits under § 1132(a)(1)(B), the plaintiff does not have a cause of action to seek the same remedy under § 1132(a)(3)(B)." Geissal ex rel. Estate of Geissal v. Moore Med. Corp., 338 F.3d 926, 933 (8th Cir. 2003) (quoting Conley v. Pitney Bowes, 176 F.3d 1044, 1047 (8th Cir. 1999)) (internal quotation marks omitted). See also Drinkwater v. Metropolitan Life Ins. Co., 846 F.2d 821, 825 (1st Cir. 1988) (reasoning that improper denial of benefits also constitutes breach of fiduciary duty under ERISA and exhaustion requirement would be rendered meaningless if plaintiffs could simply recharacterize their claims for benefits as claims for breach of fiduciary duty)). The defendants do not argue that plaintiff's fiduciary duty claim for attorneys' fees is a disguised claim for benefits, however, and the Court does not address it further.

administrative remedies that are clearly required under a particular ERISA plan, his claim for relief is barred." Midgett v. Washington Group Int'l Long Term Disability Plan, 561 F.3d 887, 898 (8th Cir. 2009) (quoted case omitted). Defendants are therefore entitled to summary judgment on plaintiff's claim in Count II for breach of fiduciary duty with respect to the failure to pay his attorneys' fees as incurred. As a result, the Court does not reach defendants' second argument, and plaintiff's motion for interim attorneys' fees will be denied.

D.  Count III - Breach of Fiduciary Duty

In Count III, plaintiff asserts a breach of fiduciary claim under ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B), alleging that defendants violated the Plan's terms requiring a successor company to assume the Severance Plan. Article IV, Section G of the Plan provides:

> **Successors and Assigns**. This Plan shall be binding upon the Company and any successor to the Company, including any persons acquiring directly or indirectly all or substantially all of the business or assets of the Company by purchase, merger, consolidation, reorganization, or otherwise. Any such successor shall thereafter be deemed to be the "Company" for purposes of this Plan, and the term "Company" shall include Ralcorp Holdings, Inc. to the extent advantageous to the Employees by providing them with the benefits intended under this Plan. However, this Plan and the Company's obligations under this Plan are not otherwise assignable, transferable, or delegable by the Company. By written agreement, the Company shall require any successor to all or substantially all of the business or assets of the Company expressly to assume and agree to honor this Plan in the same manner and to the same extent the Company would be required to honor this Plan if no such succession had occurred.

AR000012-13. The "Overview" section of the Plan, Article I, Section A, defines the term "Company" as used therein as "Ralcorp Holdings, Inc. or its participating subsidiaries and affiliates." AR000001.

Plaintiff states that under the Successors and Assigns provision, the "Company" is both ConAgra and Medallion Foods, and Shearer's is a "successor." Plaintiff alleges that defendants breached their fiduciary duty by failing to require Shearer's to "assume and agree to honor"

ConAgra's Severance Plan. Instead, the Asset Purchase Agreement between ConAgra and Shearer's only required Shearer's to provide severance benefits to former ConAgra employees consistent with the terms of its own severance policies. Relying on the plain language of Article IV, Section G, plaintiff asserts he is entitled to summary judgment in the form of the severance benefits he claims are due to him under the Plan.

Defendants move for summary judgment asserting that (1) plaintiff failed to exhaust his administrative remedies with respect to this breach of fiduciary duty claim, and (2) plaintiff cannot show that the Plan Administrator's decision not to require Shearer's to assume the Severance Plan was an abuse of discretion.

### 1. *Plaintiff Failed to Exhaust Administrative Remedies*

For the reasons discussed above with respect to Count II, the Court concludes that plaintiff was required to exhaust his administrative remedies with respect to this claim for breach of fiduciary duty. Plaintiff's sole administrative claim does not mention a breach of fiduciary duty or a request for severance benefits under Article IV, Section G, and instead only asserts a claim for benefits under Article II, B.1. As with Count II, this claim does not seek injunctive relief or to benefit the Plan as a whole and does not allege willful and systematic conduct by the defendants. Further, plaintiff asserts a claim for severance pay in this count that he characterizes as a breach of fiduciary duty. Because plaintiff failed to pursue and exhaust administrative remedies required under the Plan, his claim for relief in Count III is barred. See Midgett, 561 F.3d at 898. Defendants are therefore entitled to summary judgment on Count III.

### 2. *ConAgra's Decision to Not Require Shearer's to Assume the Severance Plan Was Not an Abuse of Discretion*

In the alternative, assuming for purposes of summary judgment that plaintiff was not required to exhaust administrative remedies with respect to his breach of fiduciary duty claim based on ConAgra's failure to require Shearer's to assume the Severance Plan upon purchasing Medallion Foods, the Court concludes that ConAgra's failure to do so was not an abuse of discretion.

Plaintiff's motion for summary judgment on Count III is supported only by his interpretation of the language of the Successors and Assigns provision of the Plan. As stated previously, the Severance Plan grants the Plan Administrator and EBAC the exclusive discretionary authority to construe and interpret the Plan's terms. Where plan language grants an administrator this type of discretion, the Court must review the "administrator's construction of the plan terms for an abuse of discretion[.]" <u>Silva</u>, 762 F.3d at 717. Thus, the Court reviews for an abuse of discretion ConAgra's determination that the Plan's terms did not obligate it to require Shearer's to assume and agree to honor the Severance Plan as part of the sale of Medallion Foods.

Defendants contend that the language of the Severance Plan does not mandate that ConAgra require each and every company that buys any portion of its business to assume the Severance Plan. Rather, they contend the Successors and Assigns provision requires only that ConAgra ensure assumption of the Severance Plan by a successor that acquires "all or substantially all of the business or assets of the Company." Defendants state the record evidence shows that Medallion Foods was not "all or substantially all" of Ralcorp, as it was just one of more than forty facilities ConAgra acquired when it purchased Ralcorp, and when ConAgra sold Medallion Foods to Shearer's, it represented only two percent of all of Ralcorp's assets.

After considering the relevant factors, the Court concludes the defendants' decision not to require Shearer's to assume the Severance Plan was not an abuse of discretion. First, defendants' interpretation of the Successors and Assigns provision is not contrary to the clear language of the Plan, as the Plan only requires that a successor to "all or substantially all of the business or assets of the Company" be required to assume the Severance Plan. This phrase is not defined in the Plan, and therefore defendants have the exclusive discretion to define its meaning. Although plaintiff argues that the "Company" in this phrase means Medallion Foods, all of which was sold to Shearer's, his interpretation is not the only one that can be reasonably derived from the Plan's language. Defendants' interpretation of the Successors and Assigns provision as referring to the sale of all or substantially all of ConAgra's business is reasonable and supported by substantial evidence, as defendants have established that the Medallion Foods division constituted a very small portion of ConAgra's entire business or assets.

The defendants' interpretation of the Successors and Assigns provision does not conflict with the substantive or procedural requirements of ERISA, because ERISA does not create any substantive entitlement to employer-provided severance benefits or to having a successor employer adopt a severance plan, and the Plan's review procedures meet ERISA's requirements. The defendants' interpretation does not render any language in the Plan meaningless or internally inconsistent, or run contrary to Plan goals. There is no evidence in the record as to whether ConAgra required any other purchaser to assume the Severance Plan, so the Court does not consider this factor. The Court also considers ConAgra's conflict of interest, but finds this conflict does not overcome the reasonableness of the determination.

The Court therefore holds in the alternative that defendants are entitled to summary judgment on Count III because the decision not to require Shearer's to assume and honor the terms of the Severance Plan upon the sale of Medallion Foods was not an abuse of discretion.

## V. Conclusion

For the foregoing reasons, the Court concludes that defendants are entitled to summary judgment on all of plaintiff's claims. Defendants' motion for summary judgment will therefore be granted and plaintiff's motion for summary judgment will be denied. Plaintiff's first motion for interim attorneys' fees will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment is **GRANTED**. [Doc. 45]

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment is **DENIED**. [Doc. 51]

**IT IS FURTHER ORDERED** that plaintiff's first motion for interim attorneys' fees is **DENIED**. [Doc. 39]

An appropriate judgment will accompany this Memorandum and Order.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  16th  day of June, 2016.